I will ask the court clerk, are we ready to go to the third case? All right, counsel have 15 minutes aside and whenever you're ready. Good morning and may it please the court. Ryan Tack Hooper on behalf of appellant Jake Culver. I'd like to reserve five minutes for a rebuttal if I may. This is a case about 3M using void non-compete agreements against a set of laid off workers. Jake Culver works in a specialized field of self healing paints and films. In 2023, 3M laid off Mr. Culver alongside roughly 6,000 other employees. 3M gave the laid off employees a standardized severance agreement conditioned on them abiding by their employment agreements, which included standardized non-compete clauses. 3M also sent out form letters explicitly reminding employees of their obligations under the non-compete agreement. This behavior by 3M is a little curious because three years earlier, the Washington legislature had declared these kind of non-compete agreements void and unenforceable. Indeed, the legislature went so far as to provide a cause of action against anyone who tried to enforce the void agreements. Statute in hand, pro se Jake Culver went to 3M and said, hey, either pay me the salary that you would owe me in order to enforce this or agree that it's void and don't enforce it. Those are the two options that the legislature gave to companies like 3M. So even if the statute is retroactive, which is a different question, but assuming for the sake of argument that the statute is retroactive, that in your view, enforcement means 3M saying your client said, I want to go work for X and 3M. I want to go work for a new company and 3M saying, tell us who it is that that's enforcing the agreement. Judge Bennett, what 3M told Mr. Culver was that he had to disclose the duties he would be performing for each new potential competitor. That is the core problem with what 3M itself called, quote, a limited waiver of the non-competition covenant. But it allowed him to accept the job that he presumably wanted to accept. That's right, Your Honor, provided that he tell 3M and agree to continue to tell them in the future the services he would be providing to 3M's competitor. And the problem with that attempt to leverage the non-compete agreement to gain information about Mr. Culver's future employment is that those employers didn't want to tell 3M how they would be using Culver's services. He's in a very specialized and narrow field of specialized materials. And when he goes to work for 3M's competitors, his competitors and he would rather not be telling 3M exactly what he's going to be doing. But he did tell them something. Yes, sir. And for 3M said, go forth and work. Go forth and work, provided you continue to agree that you will tell us about any services you provide for them that are different from the duties you've already disclosed to us in this or any other job that you take with them. That's the language that they put in there in what they termed their limited waiver. But they said, you are free to move forward with the operations manager role at United Supply, which is the only position you've brought to our attention. That's right, Your Honor. But again, subject to this obligation that they continue to enforce under the non-compete about disclosure of duties. So imagine that this 3M competitor, three months later, decides that they want to have Mr. Culver start selling self-healing paints to a different industry that they see as a business opportunity. If, under 3M's view, he would then be obligated to go back to 3M and say, hey, my duties have changed. I've got this new responsibility that I need to disclose to you. And ultimately, the reason that he lost that position is that his employer didn't want to be obligated to be telling 3M about how they were going to use Culver Services. So, for example, a company can't say that you can't use our – can't – when somebody goes to work for 3M or somebody else, the company can't say, this is all confidential. And if you leave for any reason, you can't use any of our confidential information. No, Your Honor. I think they can say that. And there's no dispute in this case that the confidentiality provisions – So they can say that, but they can't say, we want to make sure you're not using it. Can you tell us what your job duties are? They can't leverage the non-compete in order to get that information. It's 3M's position that it would have been a violation of the non-compete if Culver did not agree to continue to disclose the duties. The Washington legislature has not voided confidentiality clauses. Those, as you say, are important in business. What the Washington legislature has said is that non-competition clauses, especially as applied to laid-off workers, are something the State doesn't want unless the employer is willing to pay the wage. So your client's position, as I understand it, is the leverage here consisted of 3M insisting on this continuing duty of disclosure. Yes, Your Honor. Both the initial disclosure of the duties he'd be performing and the continuing duty to disclose those. What evidence is – I'm sorry. No, go ahead. What evidence is there that that's the reason he didn't get the new job? So I think that's precisely the sort of thing that, if he had had counsel, it would have been better articulated in the First Amendment complaint. And on this posture, the question that this Court would face is, are there conceivable facts he could have pleaded? And so the – Well, he did plead. He says that he was, quote, forced to turn down the United Supply Distribution offer because 3M was asking him for information. But I don't understand why that would force him to turn it down. I – without some explanation to tie that together, I don't understand that. Yes, Your Honor. The explanation is that the employer was uncomfortable hiring an employee who would have to have an ongoing duty to disclose his work to that. What specific paragraph in the complaint alleges that? Your Honor, it is not particularly – Well, that's my problem, I guess, because I didn't see it. And what I read to you is that he was forced to turn it down because he didn't want to give information, which is quite different than saying that he could not obtain an offer. And so I would say two things. One is there is an obligation to liberally construe pro se complaints. I think given the attachments to the complaint in the wider context, it's not an unreasonable inference that that's what was going on. But even apart from that, it would be improper to dismiss that complaint with prejudice, given the clear possibility that there's more that could be said there. If the court's question was it's not clear to me – what you just said, Your Honor. If the court's question was it's not clear to me why the limited – what was reserved in the limited waiver, why that would prevent the employment. But the provision that Judge Graber just read said to me the opposite of they wouldn't hire me. It says I wouldn't take the job. Are you saying that was false, that your client made a false representation in the pro se complaint, that he didn't turn down the job at all, that they never offered it to him? Respectfully, I don't think that's a charitable reading of what he was saying. What he was saying was I would not agree to a job. They would not agree to offer me the job. But it doesn't say that. They did offer him the job. That's what all that exchange of emails was about. And in the complaint, he says he had to turn down the job offer. So it seems to me the only reasonable way to read the attachments and the complaint is that he was given an offer and he turned it down. And his reason for turning it down was he didn't want to abide by the requirement, as you say, to provide information to 3M periodically. But I don't understand how we could read it to say that he didn't receive an offer. So, Your Honor, it's a sequence of events over time, right? It begins with an offer that's not completed. Not all the terms are there. They haven't started hiring him and paying him. But a job arrangement where you're going to come and take some kind of position with us, and therefore he goes to 3M because 3M is telling him he needs to abide by his non-compete agreement and says, hey, there's this position. And they say, go take it. Well, no. Initially they say, okay, tell us what the duties are and agree that you're going to continue to do so in the future. And so then when he takes that information to the person he was talking to about the position, they mutually decide this isn't going to work. It can't be the case that I'm going to tell 3M about my duties for you so that they learn what their competitor is doing. Counsel, even though your client was pro se, if somebody asserts, and I know you're going to disagree with my characterization, but if somebody asserts in a pro se complaint that the light was red and then their counseled argument is, well, you know, what really happened is the light was green, you know, I don't think that's the kind of area where we need to apply liberality to a pro se complaint. And respectfully, the language that Judge Graber read to me is the light is red and you're telling us the light was really green or vice versa. So, Judge Bennett, I agree with your legal premise entirely. I think it's correct that one category of thing that's carved off from expecting future amendments is to contradict the facts that were alleged. What I disagree with is just your surmise that it would be a contradiction. I think an amended complaint would make this clear and it would be consistent with what was said in the first amended complaint, which is that he was in the initial stages of receiving this job offer. As a result of what 3M told him he would need to do, he was unable to take the job. He characterized that in the language that appears in the first amended complaint. But the facts are that he took this information to his potential employer and they mutually decided this was not going to work because he could not be in the position of having to tell 3M what their competitor was doing in this very narrow and specialized field. Let me just take a moment on the claims apart from the non-compete claim. There are two other claims that are independent from that claim in this appeal. The first is the Consumer Protection Act claim. In that claim, Mr. Culver alleges both kinds of CPA claims. The rarely alleged anti-competition claim and the separate unfair or deceptive business practice of that claim that the court in State v. Black clarified. And the district court simply didn't consider the anti-competition claim, nor did 3M in their opposition in this case. That's a claim that can rise on its own apart from whether you think there's a violation of the non-compete statute. And it would arise out of the allegation that what 3M was trying to do here was get information about its competitors. It was a win-win for 3M. Either they prevent their employee from competing against them, or they learn what their employee is going to be doing for their competitors. And we think that's an anti-competitive practice. It's also a non-per se violation of the CPA, even if it's not a violation of the non-compete legislation. And the other claim is tortious business interference. Let me cancel on that second claim. A potential answer to a question, the generic question that 3M answered, I'm not suggesting it would be the answer here, would be let's say 3M had been in the business of selling proprietary widgets. A potential answer to their question would be, well, I'm going to be selling United's variation of the widget.  You're saying that what he did for 3M was sell proprietary widgets. And a potential answer to 3M's question, what are you going to be doing for the new company, I'm going to be selling widgets. Your Honor, I think you're right to put your finger on the question of how much detail was required in the disclosure. And that to some extent the extent of interference with his employment would depend on the detail that's required. But I think if you read the email exchange that appears in the attachments to the first amended complaint, it's clear that 3M was asking for quite a lot. And I would just say the framework that the legislature set up was to give employers an option. Either you agree that these are void. There's no leverage to be used for them. They are void and unenforceable and you shouldn't be telling employees anything about them. Or you pay the employee for the period in which you want to enforce it. The legislature did not permit this middle ground of, well, you can use it to leverage your employees to give you information about what jobs they'll be doing for your competitors. All right. Did you want to reserve? Yes, Your Honor. And we'll give you some extra time. I appreciate it, Your Honor. Thank you. Your Honors, may it please the Court. My name is Annie Rubin and I represent Appley 3M Company. Here the district court correctly dismissed Mr. Culver's amended complaint with prejudice and without leave to amend. There is no need to remand this case back to the district court because the issues here are pure legal issues that cannot be remedied by further amendment to this already amended complaint. Now, to be clear, 3M does not dispute the liberal pleading standard that applies to pro se plaintiffs here like Mr. Culver. But that's not the issue. The issue here is that Mr. Culver cannot state a claim for relief under any set of facts because the undisputed record shows, which was just discussed with my friend at the other table, that 3M didn't enforce or leverage this agreement against Mr. Culver. In fact, it did the opposite. Well, clearly it didn't enforce it, but what does it mean to leverage? Your Honor, that's a great question. And I think Judge Bennett kind of alluded to this at the beginning of the other side's argument. The only way that we get to leverage, first of all, is if the statute is retroactive, is determined to be retroactive. And the legislature did not define what explicitly leverage is. So if we determine that the 2024 amendment applies to the conduct of 3M and Mr. Culver's allegations, the plain meaning of the term explicitly leverage would apply. You'd apply the statutory, you know, the basic tenets of statutory interpretation. And, you know, if you look at Black's dictionary— As a practical matter, what would it involve in a situation like this? What would it count? I mean, I think it's such that 3M would get a positional advantage. I mean, that's how black law defines it. And 3M is not getting any positional advantage from asking Mr. Culver to provide very basic information about his subsequent employer, which he has raised as a competitive employment. Let's try a hypothetical. Let's say that the individual leaves 3M, lets them know that the individual is going to work he or she for XYZ Company. And a year after joining XYZ, XYZ and 3M approves, says, we're not going to enforce any non-compete. But XYZ merges with a direct competitor of 3M. Could 3M enforce? I'm sorry, could they enforce the non-compete agreement against her? Yeah. If we're defining the term non-compete to bring in action, if they have a valid non-compete under Washington non-compete law, yes, they could. And would that constitute leverage? If they bring in – well, this is the issue here, Your Honor. I mean, the initial statute defined being – well, it didn't define being enforced. It said that if an individual had an agreement that was a pre-2020 agreement, like Mr. Culver's, a 2013 agreement, it said the only way that he can bring a declaratory judgment action here would be if 3M was enforcing the agreement. And lower courts in the SOA case in the Western District defined being enforced as one thing. It defined it as essentially bringing a cause of action, right, bringing a legal action against the individual. The legislature in 2024 turned around and looked at that SOA case and said, we want – we recognize the fact pattern in SOA. And the fact pattern in SOA was they provided a laid-off employee a reminder of the agreement, handed that individual the agreement, right? They recognized that SOA case, and they said, we want to provide individuals an additional avenue of relief, and we're going to amend the statute to provide that additional avenue of relief, which is explicitly leverage, if the agreement is being explicitly leveraged. Before, the only way an individual could bring a cause of action is if the agreement was being enforced, right? And I think what Mr. Culver is trying to do here is to say that being enforced, that term in the statute, was in some way ambiguous. And it's not. And if you look at the plain meaning, which the SOA court did and which the district court did in this case, and apply the basic tenets of statutory construction. Counsel, I understand his argument to be slightly different, and I may be wrong, but regardless, if you'll address this, it would be helpful to me. I understood him to be saying that the requirement to essentially report back to 3M is a form of leveraging the agreement. We're waiving enforcement in a limited way, limited in two ways. One is, you can accept this job. We're not speaking about other jobs, but, you know, feel free to accept this job. And secondly, we want you to give us information in the future. So I think their argument is that the requirement to give information in the future is a form of leveraging the agreement. What is your response to that? I agree, Your Honor, that is their position. I would disagree that it is leveraging. If you look at the terms of the agreement, it requires that 3M also determine their rights and obligations under the agreement. And part of their rights and obligations under the agreement is that if they're forbidding him to engage in a competitive employment, they're required to continue to pay him. It's the same requirement as under the statute. In RCW 49620201, they have to pay him. And they can't determine whether or not they're required to pay him and whether or not they're actually going to leverage the agreement unless they know what position he's holding. And, Counsel, as I understand it, if I'm looking at the right document, which is the September 27 letter at ER 71, what it's saying is you have to give us certain information that you have reason to believe may violate your employment agreement. So it doesn't look to me like it's saying you have to tell us everything. If you think you're going to violate your agreement, you have to give us some information. I would agree with you, Your Honor. I think that the other side may be blowing this a little bit out of proportion that we're requesting. But whatever that means in 3M's view is it's not leveraging. It's requesting information which may be extensive or not extensive, but 3M's view is even if the statute is retroactive, this is not leverage. Correct. What they're asking is nothing more than what would be provided in a regular old job posting that you can find on LinkedIn, the description of the duties and the title. But, again, I would go back to the position that in order to get there, this statute has to be applied retroactively. And under the basic tenets of statutory construction, the amendment is not curative. And that's what their argument is for retroactivity. So in order for an amendment to be curative, it has to be clarifying or technically correcting an ambiguous statute. And the term being enforced in the initial statute was not ambiguous. And this is further clarified by the terms of the legislature's actual amendment, which included after the words being enforced, quote, or explicitly leveraged. That phrasing and the use of the disjunctive shows that the legislature meant being enforced to mean one thing and explicitly leveraging to mean something else. And they did this with the information of how the SOA court was defining being enforced. So if they were clarifying that statute by this amendment, that's not what they did. Counsel, this may be in your brief, and I apologize for not remembering. But does the Washington legislature have a practice of ever saying this particular statute that we're passing is retroactive? Do they have a practice of either saying it or not saying it? Your Honor, first of all, that's not in my brief, but it's a good point to make. And, yes, there are statutes that say, yes, this is retroactive. And arguably the non-compete statute applies here, right? Like the RCW 620804 gives a limited retroactivity to the statute that was enacted in 2022 if the agreement was being enforced. In most states, and I'll plead some ignorance of the law of the state of Washington. And I'm from Arizona. But in Arizona, the courts have explicitly said to the legislature, if you mean this statute to be retroactive, here's what you must say and express words. Is that the case here? Washington courts do not do that that I'm aware of. But I would agree with you that one of the methods in which a statute can be determined to be retroactive is if the legislature explicitly says so. And here they didn't. Here they did not. Granted, I will say that the Washington courts, there's a strong presumption against retroactivity. And there are three, you know, limited exceptions to that presumption against retroactivity. One, if the legislature says so, just like you said. The second is if it's curative. And the third if it's remedial. This amendment here is none of those things. It doesn't explicitly say so. It's not curative. And it's not remedial. What it does is it provides individuals with a new substantive right, a new way to bring a deck action under the non-compete statute for agreements that predate the statute. So what it's essentially doing is saying agreements that were legal at the time they were entered into and employer's conduct that was legal at the time it was done are now considered to be, if it applies retroactive, now exposes the employer to a new lawsuit. And in those circumstances, Washington courts do not apply these types of statutes retroactively, these types of amendments, excuse me, retroactively. And so what we're faced with here is Mr. Culver attempting to bring a lawsuit under the non-compete statute where it's not being enforced, where no legal action has been taken by 3M and he can't allege otherwise. Now, I'd like to turn very briefly to their argument under the Consumer Protection Act. And I raise it because I'm a little bit taken aback that there is an argument that the district court failed to address a claim and that we failed to address it in our briefing. And I looked at this in my preparation. I said, how could that be so? And it's because it's not. The CPA claim that Mr. Culver asserts is on ER 68 paragraph 38. It states, 3M conducted unfair business practices in violation of RCW 19.86. That is the only cause of action that he brings under the CPA. And he now appears to be claiming on appeal that he's asserted a second distinct claim under the CPA for, quote, unfair method of competition. And that that district court failed to address it. And that that claim, unlike the unfair deceptive trade practice claim, doesn't require the five elements that are set forth in Hangman Ridge, which was discussed with the previous case. And that's just not the case. That position is not supported by law. And they rely on a case from 1982, State v. Black, that was brought by the Washington attorney general, not by a private litigant. Two years later is when Hangman Ridge was decided in 1986. And in that case, they set out the elements for a private individual to bring a private cause of action under the CPA. And it included those five elements. They drew no distinction between an unfair method of competition claim and an unfair and deceptive trade practice claim. And Mr. Culver cannot cite any case in which a private right of action did not apply those five elements or applied a separate distinct claim for an unfair method of competition. Granted, there are other issues where Mr. Culver cannot meet those five elements. But I want to clarify that for the court now, that there is not a separate claim. And they cannot cite to one where a court in Washington did not apply the five elements or recognize a separate claim for a private litigant. Further, the district court correctly applied those elements and found that Mr. Culver cannot allege the elements necessary to bring a CPA claim. This is a private contractual matter that does not impact the public. There is not a single case in Washington in which the CPA has been found that an individual employee and an employer who enter into a non-compete agreement, that that set of facts qualifies for a CPA claim, enforcement or otherwise. Further, he can't allege that 3M in any way engaged in any unfair or deceptive trade practice, in practice or unfair method of competition with respect to what it did and what he alleged they did with respect to his non-compete agreement and simply asking him for a job title and job description. It released him. So, to close, in order for Mr. Culver to prevail on appeal and proceed in district court, either the term being enforced means explicitly leverage, which it doesn't, or the amendment is retroactive, which it is not, as we discussed. And it's important to recognize that when 3M actually was confronted with a competitive position, it released him so that he could accept employment. And he opted not to. Instead, he opted to sue 3M to seek pay continuation. Respectfully, 3M requests that this court affirm the district court's dismissal. All right, thank you, counsel. And we'll put three minutes on the clock for your rebuttal. Thank you, Your Honors. A few clarifications. Taking Judge Bennett's hypothetical about the red light, green light contradiction, I want to say I went back and read paragraph 23 of the complaint. And if I were drafting the second amended complaint, that paragraph would still appear in its entirety because it's correct. He was forced to turn down the job due to the intrusive nature of the requests. That's what paragraph 23 pleads. What would be added is exactly why he was forced to turn it down, what his employer's response was to those requests. So I don't think it's a contradiction of what was pleaded in the first amended complaint. And I would add that paragraph 32 of the first amended complaint also references other opportunities that were interfered with. I think it would have been appropriate for the district judge perhaps to say you've not pleaded that adequately, bring it back to me, but a dismissal with prejudice was not the appropriate way to deal with that. Second, on this issue of the separate CPA claims, my friend on the other side is just wrong about the docket. If you follow the progeny of State v. Black, it is very clear that these are two distinct claims that can be brought by private litigants in Washington. It is absolutely true that the anti-competition claim is much rarer than the other claim, in part because Washington has very generous standard for the pleading of an unfair or deceptive practice. But in a case that is directly about interference with competition, a non-competition claim, it is straightforwardly also an anti-competition claim under that statute. And Mr. Culver pleaded it. In paragraph 3 of the complaint, he says anti-competition and unfair or deceptive acts and practices, that's the provision that we cited in our briefing and that the district court, in liberally construing the complaint, should have treated it that way. So let me spend whatever time I have left on this issue of the meaning of enforce and whether it's a curative amendment. So the only way to consistently read the word enforce and enforcement in this statute is to read it in the sense of the party to a contract telling the other party they must comply with a provision. For example, the key provision that voids these says that if it's not voided, you must pay the person during the period of enforcement. Well, that doesn't refer to the period of a court action. It doesn't refer to the period of the arbitration. It refers to the period in which the employer is telling the employee they must abide by some part of that agreement. Enforce just means the contract party is saying you must do this thing under your obligation under the contract. So I think a correct de novo interpretation of that word doesn't even require you to reach the question of retroactivity. You can just find that the correct interpretation of enforce includes what 3M did in this case. But if you did reach retroactivity, Washington courts are very clear, including in McGee, that it is not necessary for the legislature to expressly say we are making this retroactive. The biggest category where that's not necessary is where you have an amendment in response to incorrect court decisions. And we know that's why this amendment happened, because the Senate bill report says we are doing this because of SOA. Counsel, I normally don't ask questions during rebuttal, but unless I'm missing it, the way I read that report was it said we're summarizing public testimony. Your Honor, I don't think it's a summary of public testimony. The section that we're referencing is the final paragraph of a staff-prepared provision. Now, granted, it's not legislators saying this was their intent. Is that part of the document that said nothing in here should be taken as legislative intent? That's right, Your Honor. And you're saying that that's legislative intent? Well, Your Honor, the Washington Supreme Court has said when you're interpreting legislative intent, you can include staff reports like this just as you would include the timeline, right? You would just look at the fact that SOA was decided, and then in the next section they changed SOA's decision, right? And so even if you ignored the Senate bill report, the context is the same, which is that this was clearly an effort to fix what they thought was a misinterpretation of their original legislation. That kind of fix is treated as retroactive under Washington law. All right. Thank you, counsel. We thank counsel for their arguments, and the case just argued is submitted. I'll ask the court to adjourn.
judges: HAWKINS, GRABER, BENNETT